*NATIONAL REGISTERED AGENTS, INC.*

*SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To: JOHN E. ZAMER
Jones Day
1420 Peachtree St NE Ste 800
Atlanta, GA 30309-3053

SOP Transmittal # **529248475**

919-821-7139 - Telephone

Entity Served: GUARDIAN PHARMACY OF PIEDMONT CAROLINAS, LLC (Domestic State: GEORGIA)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of NORTH CAROLINA on this 31 day of May, 2016. The following is a summary of the document(s) received:

1. **Title of Action:** Loleitha (Tina) Wilson, Pltf. vs. GUARDIAN PHARMACY OF PIEDMONT CAROLINAS, LLC, etc., Dft.

2. **Document(s) Served:** Other: Summons/Return/Complaint/Certificate/Verification/Exhibit(s)

3. **Court of Jurisdiction/Case Number:** Mecklenburg County Superior Court, NC
   Case # 16CVS9812

4. **Amount Claimed, if any:** N/A

5. **Method of Service:**

   ___ Personally served by:     ___ Process Server     ___ Deputy Sheriff     ___ U. S Marshall

   _X_ Delivered Via:     _X_ Certified Mail     ___ Regular Mail     ___ Facsimile

   ___ Other (Explain):

6. **Date of Receipt:** 05/31/2016

7. **Appearance/Answer Date:** Within 30 days after you have been served

8. **Received From:** Loleitha (Tina) Wilson     9. **Federal Express Airbill #** 783248060641
   4815 Shea Ct.
   Monroe, NC 28110
   704-488-3165

   10. **Call Made to:** Not required

11. **Special Comments:**
   SOP Papers with Transmittal, via Fed Ex 2 Day

**NATIONAL REGISTERED AGENTS, INC.**        CopiesTo:

Transmitted by Pamela Adams

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL



EXHIBIT

A


7015 0640 0000 4470 8279




U.S. POSTAGE
PAID
INDIAN TRAIL, NC
28079
MAY 27 16
AMOUNT

1000

27601

**$7.99**

R2304M110524-20

Guardian Pharmacy of Piedmont
Carolinas, LLC d/b/a Winyah Pharmacy
Atten: National Registered Agents, Inc,
( Registered Agent )
150 Fayetteville Street, Box 1011
Raleigh, NC 27601

| STATE OF NORTH CAROLINA | File No. 16-CVS- _9812_ |
|---|---|
| **COUNTY OF MECKLENBURG** | In the General Court of Justice<br>( ) District  ( X ) Superior Court Division |

| | |
|---|---|
| Plaintiff's Name<br>LOLEITHA (TINA)WILSON | **VIA CERTIFIED MAIL** |
| Address<br>4815 Shea Ct. | |
| City, State, Zip<br>Monroe, North Carolina  28110 | **CIVIL SUMMONS** |

| **V E R S U S** | * ( ) Alias and Pluries Summons<br>The summons originally issued against you was<br>returned not served. | |
|---|---|---|
| Defendant<br>**GUARDIAN PHARMACY OF PIEDMONT CAROLINAS, LLC D/B/A WINYAH PHARMACY; GUARDIAN PHARMACY, LLC** | Date Last Summons Issued | Disregard this section unless the block is checked |

| TO:   Name and Address of First Defendant<br>GUARDIAN PHARMACY OF PIEDMONT CAROLINAS, LLC d/b/a WINYAH PHARMACY<br>Attn: National Registered Agents, Inc.,<br>(Registered Agent)<br>150 Fayetteville Street, Box 1011<br>Raleigh, NC 27602 | TO:   Name and Address of Second Defendant<br>GUARDIAN PHARMACY, LLC<br>Attn: National Registered Agents, Inc.<br>(Registered Agent)<br>150 Fayetteville Street, Box 1011<br>Raleigh, NC 27602 |
|---|---|

<table>
<tr><td colspan="2" align="center"><b>A Civil Action Has Been Commenced Against You!</b><br>You are notified to appear and answer the complaint of the plaintiff as follows:<br>   1. Serve a copy of your written answer to the complaint upon the plaintiff or his attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy, or by mailing it, to the plaintiff at the plaintiff's last known address, and<br>   2. File an original of the written answer with the Clerk of Superior Court of the county named above.<br>If you fail to answer the complaint the plaintiff will apply to the court for the relief demanded in the complaint.</td></tr>
<tr><td>Name and Address of Plaintiff's Attorney<br>If none, Address of Plaintiff<br><br>Loleitha (Tina) Wilson<br>4815 Shea Ct.<br>Monroe, NC 28110</td><td>Date Issued <u>5-27-16</u>   Time Issued <u>10:16</u> (X) AM  ( ) PM<br>Signature _____<br><br>( ) Deputy CSC (X) Assistant CSC ( ) Clerk of Superior Court</td></tr>
<tr><td>( ) ENDORSEMENT<br>   This summons was originally issued on the date indicated above and was returned not served.  At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days.</td><td>Date of Endorsement       Time Issued ( ) AM  ( ) PM<br>Signature<br><br>( ) Deputy CSC ( ) Assistant CSC ( ) Clerk of Superior Court</td></tr>
</table>

| | **RETURN OF SERVICE** | |
|---|---|---|
| | I certify that a copy of the complaint were received and served as follows: | |

| | **DEFENDANT 1** | |
|---|---|---|
| Date Served | Name of Defendant | |

O     By delivering to the defendant named above a copy of the summons and complaint.
O     By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.
O     As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name and address of person with whom copies left (if corporation, give title of person copies left with)

O Other manner of service (specify)

O Defendant WAS NOT served for the following reason.

| | **DEFENDANT 2** | |
|---|---|---|
| Date Served | Name of Defendant | |

O     By delivering to the defendant named above a copy of the summons and complaint.

O     By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

O     As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

O Name and address of person with whom copies left (if corporation, give title of person copies left with)

O Other manner of service (specify)

O Defendant WAS NOT served for the following reason.

| Service Fee Paid | Date Received | Name of Sheriff |
|---|---|---|
| By: | Date of Return | County |
| | | Deputy Making Return |

FILED

STATE OF NORTH CAROLINA,              IN THE GENERAL COURT OF JUSTICE
COUNTY OF MECKLENBURG 27 AM 10: 17 SUPERIOR COURT DIVISION
                                                 16-CVS-_____

LOLEITHA (TINA) WILSON            )
                    Plaintiff,         )
                                       )
v.                                     )
                                       )        **COMPLAINT**
                                       )     **(Jury Trial Demanded)**
                                       )
GUARDIAN PHARMACY OF                   )
PIEDMONT CAROLINAS, LLC D/B/A          )
WINYAH PHARMACY; GUARDIAN              )
PHARMACY, LLC.                         )
                    Defendant(s).      )

        NOW COMES Plaintiff Loleitha (Tina) Wilson (hereinafter "Wilson" or

"Plaintiff") complaining of Defendants, Guardian Pharmacy of Piedmont Carolinas, LLC

d/b/a Winyah Pharmacy and Guardian Pharmacy, LLC (hereinafter "Guardian Pharmacy"

or "Defendants"), and alleges and says:

        1.      This action is brought, inter alias, to remedy discrimination against

Plaintiff on the basis of retaliation, disability and national origin to redress the

deprivation of rights secured to the Plaintiff. Plaintiff seeks to restrain defendants from

maintaining a policy, practice, custom or usage of discriminating and retaliating against

Plaintiff for exercising her rights under Title VII with respect to compensation, terms,

conditions, and privileges of employment in ways which deprive Plaintiff of equal

employment opportunities and otherwise adversely effect Plaintiff's status as an

employee. Plaintiff's Complaint is brought pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII") as amended by the Civil Rights Act of 1991, the Americans with

Disabilities Act, as amended ("ADAAA"), including the right to be reasonably

accommodated and no retaliation, protected by Title I and Title V of the Americans with

Disabilities Act of 1990, as amended, codified in 42 U.S.C. § 12101 et. seq., which

incorporates by reference the powers, remedies and procedures set forth in 42 U.S.C. §
2000e-5; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as amended,
Sections 501 and 505 of the Rehabilitation Act, 29 U.S.C. § 701 et seq.,as amended,
violation of the North Carolina Persons With Disabilities Protection Act, N.C. Gen. Stat.
§ 168A et. seq. ("NCPDPA") and under North Carolina law including public policy of
North Carolina against retaliation and discrimination in the workplace as set forth in the
Equal Employment Practices Act, N.C. Gen. Stat. §143-422.2 ("NCEEPA") [1], for
wrongful discharge under North Carolina law.

2.       Plaintiff seeks monetary relief, compensatory damages, liquidated, treble
and/or punitive damages pursuant to all relevant and applicable statutes for claims as set
out above and herein.

3.       Plaintiff timely filed Charges of Discrimination with the Equal
Employment Opportunity Commission ("EEOC") on or around May 4, 2015, designated
as EEOC Charge No. 430-2015-00562N and thus has satisfied the prerequisites for
administrative exhaustion required for filing suit in this Court.

4.       Additionally, on or around July 23, 2015, Plaintiff amended her Charge
No. 430-2015-00562N.

5.       Plaintiff's EEOC Charge, as amended, presented violations of her rights by
Defendants on the basis of race/color/national origin discrimination and retaliation,
failure to accommodate and engage in the interactive process under the ADAAA.

6.       The EEOC issued Plaintiff's Right to Sue Notice for Charge No. 430-
2015-00562N, mailing the notice dated February 29, 2016, via first class mail (Exhibit

---

[1] While this law is in influx at the moment, Plaintiff's incidents as alleged and undertaken against her by
Defendant occurred prior to the changes in the NCEEPA, as modified by HB2.

2

A), and on or around March 3, 2016, Plaintiff received the Right to Sue Notice. This lawsuit is timely filed within 90 days of that notice.

7. This court is a court of general justice and is therefore a proper venue for hearing this cause of action.

8. Plaintiff worked at the Charlotte, North Carolina location of Guardian Pharmacy, was a citizen and resident of Union County while employed by the Defendants, and has since resided in multiple counties, including Mecklenburg County, in an effort to obtain housing and seek gainful employment.

9. Defendant Guardian Pharmacy, LLC is known and seems to use the name, Guardian Pharmacy of Piedmont Carolinas, LLC interchangeably with Guardian Pharmacy, LLC. However, upon information and belief, they are a joint enterprise, related, but two separate and legal entities. Upon information and belief, Guardian Pharmacy, LLC is headquartered at 1776 Peachtree Rd., NW, Suite 500S, Atlanta, Georgia. Guardian Pharmacy provides services through its twenty-three (23) pharmacies located in eleven (11) states across the United States with over 1200 employees.

10. Guardian Pharmacy of Piedmont Carolinas, LLC is one such pharmacy and is located in Charlotte, North Carolina at 9731-G Southern Pine Boulevard, where it employees twenty-seven (27) employees. During the time Plaintiff worked at this location, Guardian Pharmacy was also known as and often referred to itself as Winyah Pharmacy. Defendants were doing business in North Carolina at all relevant times; and Plaintiff worked out of Defendants' location in Charlotte, North Carolina.

11. Plaintiff seeks damages in sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

3

12.     Plaintiff has exhausted her administrative remedies as required by law.

13.     Plaintiff is an African-American female from England having an English accent and of Jamaican descent.

14.     Plaintiff was employed by Defendants at all times relevant to this Complaint and worked for Defendants from January 28, 2013 until she was terminated on December 4, 2014.

15.     The unlawful employment practices complained of herein occurred within the jurisdiction and management of Defendants and Plaintiff's former employer, Guardian Pharmacy.

16.     Defendants and its agents' unfair treatment, unsubstantiated and unwarranted disciplinary actions, intervention with Plaintiff's ability to continue with her previously granted accommodations, and termination of Plaintiff are adverse actions at issue in this case. Plaintiff alleges that Defendants' reason for terminating her is pretextual; and that she was terminated because of her disability, national origin and in retaliation for asserting her rights, lodging complaints and refusing to comply with Bruce Dann's requests and demands that were in violation of the law.

17.     At all relevant times, Plaintiff was eligible for and/or received benefits under Defendants' company-sponsored plans and leave policies.

18.     At all relevant times, Plaintiff was a "qualified individual" as defined by Title I of the ADA, and as being disabled, regarded as or perceived to be disabled, and including but not limited to section 12111(8) of the ADA, as amended, and within the meaning of Section 504 of the Rehabilitation Act. Furthermore, upon information and belief, Defendants have programs run by or funded by federal agencies or projects that receive federal financial assistance.

4

19.     Plaintiff had been performing all of the essential functions of her job for almost two years, prior to her being notified that she would no longer be accommodated and that she was being denied accommodations by substantially changing her working schedule. Plaintiff was unable to perform certain work-related duties during the work hours as proposed without accommodations, as her vision was impaired and her eyesight was extremely limited in darkened environments and at night.

20.     At all relevant times, Defendants were a "covered" employer and as further defined in 42 USC § 12111(5)(A) of the ADA, as amended. At all times alleged herein, Plaintiff was an "employee" within the meeting of the ADA and 42 USC § 2000e(f).

21.     Plaintiff contends that Defendants knew or should have known that its employees and agents including David Whitlock, Holly Smith, Kim Gordon, and Bruce Dann were treating her differently than employees not in her protected class, and specifically David Whitlock, Holly Smith, and Kim Gordon had direct knowledge of Plaintiff Wilson's accommodations. Moreover, Defendants are vicariously liable for the acts and actions of its agents, employees, management, subsidiaries, branch offices, and agents thereof while performing within the scope of employment and/or duties. ( See Exhibit A)

22.     Guardian Pharmacy's employees served as Plaintiff's direct supervisors and managers, controlling the means and manner by which Plaintiff performed her work, including directing Plaintiff's specific day-to day duties, scheduling, tasks and determining how the assigned tasks were to be performed, responsible for answering and addressing Plaintiff's substantive questions and concerns regarding her work.

5

23.     The actions of Defendants and its agents herein are imputable to Defendants.

24.     Defendants, its successors in interest, officers, managers, supervisors and other agents at the time of the actions, ratified the actions of its agents and employees when it failed and neglected to take adequate and corrective actions to remedy the actions as taken against Plaintiff.

## STATEMENT OF FACTS

25.     At all relevant times herein since hire, Plaintiff Wilson satisfactorily performed the duties of a full-time Billing Specialist where as of her 2013 performance review she received an overall rating of 3.47, which translates on Defendants' scale as above average. At the time of termination, she earned $17.51 per hour. Among other things, Plaintiff was responsible for billing, claims resolution, and collections where she excelled at clearing past due balances.

26.     Plaintiff has a physical condition that substantially limits a major life activity. Plaintiff has a condition known as Nyctalopia. Consequently, among other things, she is not able to drive at night, has poor vision in the dark and has panic attacks that are brought on while being in dark places.

27.     When Plaintiff was hired by Holly Smith with the approval of David Whitlock, she was hired with the knowledge that she had a medical condition that prevented her from working evenings or nights, and this was accommodated by giving Plaintiff a working schedule that did not require her to work after 5:00 p.m., taking into consideration the daylight savings time seasonal changes.

6

28.     However, Plaintiff Wilson's Supervisor, Holly Smith, left Guardian Pharmacy and Kim Gordon, Pharmacy Director for the Georgetown Office became the acting manager for the Charlotte office.

29.     On or around December 2013, Bruce Dann was hired as Plaintiff's new manager, and upon hearing of the new hire, Plaintiff inquired of Kim Gordon as to whether Plaintiff needed to provide any updated doctor's information to make Bruce Dann aware of her condition and accommodations. Kim Gordon informed Plaintiff Wilson that she did not need to take any action, that she would make him aware and that was sufficient. Ms. Gordon indicated she would handle this with Bruce Dann.

30.     While occasionally Plaintiff's hours may have fluctuated to some extent, due to situational circumstances, up until that time, as a general proposition, Plaintiff worked from 7 a.m. - 4 p.m. and continued to work similar hours for almost 6 months after Bruce Dann was hired as Plaintiff's manager.

31.     Plaintiff began to be treated very differently after Bruce Dann was hired. He would make comments to Plaintiff and asking her, "why do you have to talk like that?" In referring to her accent, these frequent comments were felt to be discriminatory and inferred to be racial, meaning Bruce Dann needed Plaintiff to talk like a "regular black person." Upon information and belief, Plaintiff believed then and believes now that it bothered him to see a black-skinned person with an accent and simply could not reconcile this fact with his ethnic and racial biases and perceptions of Plaintiff Wilson. He began to isolate Plaintiff and prevented her from talking to others who had a lead role in the department when she needed to seek guidance support and information. Others were not prevented from doing so.

7

32.     When Plaintiff complained and inquired about this treatment, she was told her communicating with others was a form of socializing and he became hostile towards Plaintiff.

33.     Around May 2014, Bruce Dann openly made negative comments about Plaintiff Wilson in a small company meeting of about five attendees. Furthermore, he stated to all of the meeting attendees, "Well, Tina cannot work the hours to suit her, but the hours to suit the company."

34.     Thus, Plaintiff heard about the meeting and immediately requested a meeting with David Whitlock, in order to clarify and request that her accommodation be communicated to Bruce Dann, in the form of a schedule change, and subsequently Plaintiff opposed Defendants' scheduling actions.

35.     Without engaging in any form of interactive process, Bruce Dann called Plaintiff Wilson into his office, and with his business card in Plaintiff Wilson's face, in a very loud, hostile, forceful tone and intimidating manner, says to her, "Read this, What does it say?" He went further to say, "You'll get more out of me than you'll get out of David." Then, he asked Plaintiff "...And why are you going to Kim?" Plaintiff was literally shaking, not knowing that he realized she had gone to David, and responded to his question about Kim stating she was her supervisor when they were without a supervisor. It was at this time, without any further inquiry, that Bruce Dann informed Plaintiff that she would need to work 9-6.

36.     Plaintiff reminded Bruce Dann and Brandy Apple about her medical condition and need for accommodations. She explained that her duties as set out for her and as were being performed were being accomplished successfully within her modified schedule. Defendants discriminated against Plaintiff on the basis of Plaintiff's disability

8

by denying Plaintiff's request for a reasonable accommodation and discharging Plaintiff from her employment.

37.     Consequently, later that day in May 2014, Plaintiff sent an email to David Whitlock asking to speak with him, as she was very troubled by the series of events and her environment becoming increasingly hostile for her. However, she did not receive a response.

38.     Subsequently, around June 2014, Bruce Dann gave Plaintiff her review, it included that her new hours were going to be 9 a.m. - 6 p.m.. He stated that he knew she had previous accommodations but she was not going to be accommodated going forward and this was going to suit his needs. He also asked her to develop a task-based job description. Having not been provided with a written job description, she later developed and provided her tasks to him. Interestingly, her performance review was performed without a job description. There was no written job description for her position prior to her providing a tasks list to Bruce Dann in June 2014.  Thus, there were no specific hours listed in a job description. However, around June 2014, after providing this information to Bruce Dann and after being given her down-graded performance review, a Sr. Billing Specialist position was posted.

39.     During her review in June 2014, Plaintiff received a satisfactory rating and a 3% increase, but felt penal and targeting. Bruce Dann made additional statements to Plaintiff accusing her of socializing and informed her again he was not to talk to anyone, and if she had questions or complaints to only see him, as he was her manager, now. Prior to this time, Kim Gordon was the acting manager and Mary Fountain was an office resource who acted as a team lead. Plaintiff perceived this directive from Bruce Dann to

9

be in retaliation for going to Human Resources, David Whitlock, Kim Gordon and for asking Mary to sit in one their meeting, for which Bruce Dann refused to allow.

40. Wilson's normal hours of work and as scheduled were originally not to exceed 5:00 p.m., and had become by practice, 7-4. The short notice would require her to make significant changes to her transportation routine, as she would have to rely on others to get her to and from work, as she was unable to drive when it was dark, and she was very uncertain as to how this would impact her health or if she could even perform under these conditions.

41. Plaintiff Wilson was refused accommodations without a job description in place. However, during November 2014, Atenae King, a fellow co-worker who had been hired to assist with billing, was going to be out of the office on November 11, 2014. After some inquiry of Bruce Dann, Plaintiff was told she was expected to work in Atenae King's absence, further stating, " if you cannot work, I might as well fire you." Plaintiff was fearful for her job and made best efforts to make transportation arrangements for November 11, 2014. Plaintiff Wilson was so disturbed by this series of events that she left to go home early that day.

42. Upon her return to the office, Atenae King, worked 9-6, and for any after hours issues or duties that arose after Plaintiff Wilson left, Atenae King handled. These issues and duties were not part of Plaintiff Wilson's job description or tasks at the time.

43. Plaintiff Wilson was given a retaliatory performance review where she was falsely accused by Bruce Dann of socializing and refusing to work her position's hours.

44. At no time did Plaintiff Wilson refused to work her hours. She continued to come in the hours for which she was hired. However, Bruce Dann began to change

10

Plaintiff's work schedule such that Plaintiff no longer could work 7-4, or even until 5:00 p.m. Plaintiff would be required to work during dark hours and to locate alternate transportation options from Monroe, North Carolina to Charlotte, North Carolina, which she did not have consistently for those hours. During the last quarter of 2014, Plaintiff made her best efforts to meet Defendants' heightened scheduling without requesting additional accommodations, although Defendants' schedule would cause increased risk to Plaintiff's health. On December 4, 2014, Bruce Dann, communicated to Plaintiff that she was terminated and it was due to business-related needs for the changes to working hours that she refused to make.

45.     At no time did Bruce Dann engage in an interactive process, at no time did he separate out the manner of performance and the results to be achieved, at no time did he define the essential functions of the job to be certain work hours, and Plaintiff's replacement was one outside of her protected class.

46.     Plaintiff's abilities to perform what she knew to be the essential functions of her job had not changed since she was hired in 2013. Plaintiff performed all of her job duties, and there was no evidence presented that there had been any incidents suggesting any efficacy, safety or client issues reported to Defendants, as related to Plaintiff or her hours.

47.     The Department of Commerce, Division of Employment Security Division, held that the employer's information was without support and contradictory to Plaintiff Wilson's information. Ms. Wilson was found to be eligible for unemployment insurance benefits, having found no misconduct.

48.     Plaintiff Wilson was not treated as similarly situated employees outside of her protected class, Defendants refused and declined to accommodate Wilson, yet

11

Defendants accommodated Atenae King's scheduling requests for leave and time off during her pregnancy but refused to accommodate Plaintiff Wilson for her disability. Atenae King was not of the same ethnic origin as Plaintiff, and she was a light-skinned female.

49.     Defendants did not respond appropriately or adequately to Plaintiff's need for accommodations and as a result failed its duty to Plaintiff. Additionally, Defendants did not engage in an interactive process or conversation regarding what Plaintiff needed.

50.     Instead, almost immediately after Plaintiff complained to her manager's manager and Human Resources about this lack of adequate response, she was disciplined as part of a down-graded performance review.

51.     At the time Plaintiff engaged in her oppositional activity, she was exercising protected activity and was in a protected class in that she was disabled and of Jamaican descent who believed she was making an accommodation request and opposed Defendants' response and practices by complaining to her supervisor and manager and reporting to Human Resources.

52.     Under the pretext of business related needs, Plaintiff was terminated on December 4, 2014.

53.     Plaintiff Wilson believed then and believes now that December 4, 2014 and all that led up to it was a fabrication of a pretextual issue to terminate Wilson and was the ultimate retaliation.

54.     Requesting reasonable accommodations is activity protected against retaliation under Section 503 of the ADA, as amended.

55.     As a direct and proximate cause of Defendants' actions, as alleged herein, Plaintiff Wilson lost her means of earning a living, opportunity for retirement benefits,

12

life insurance benefits, her solid reputation in the community, was forced to borrow money, lost her house, lost her health/dental insurance coverage through work and other economic losses.

56.     Plaintiff was unemployed since the date Defendants wrongfully terminated her, and diligently sought gainful employment without success until very recently.

57.     Subsequent to Plaintiff Wilson's unexpected and unlawful termination by Defendants, Plaintiff has been unable to obtain an income or salary comparable to that which she was receiving while employed by Defendants and has also been without adequate health care and other benefits associated with employment.

58.     Plaintiff was able to perform the job with accommodations, yet Defendants excluded her from job opportunities.

59.     Plaintiff Wilson was initially accommodated by adjusting her work schedule so that she was not required to work in the dark or at night.

60.     Plaintiff Wilson asked and inquired about additional options after Dann was hired, but she was refused by Bruce Dann.

61.     The specific hours as mandated by Bruce Dann under the pretext of business necessity were not included in the Plaintiff Wilson's job description, nor were these hours the essential function in the job description whereby Plaintiff's job could be performed in a different way, time or means, as long as the job as described in the job description was performed, as Plaintiff had shown could be done.

62.     The ADAAA defines "reasonable accommodation as including but not limited to, job restructuring, part-time, modified work schedules, reassignment to a vacant position, and other options.

13

63. Additionally, when Atenae King was hired, she was able to assist and work the hours from 4:00-6:00 p.m., the hours Plaintiff Wilson was unable to work.

64. Plaintiff Wilson was wrongfully terminated, systematically removed from her position following her wage, hour and work place accommodation requests, issues and complaints; denied the opportunity to continue her employment with or without accommodations, was retaliated against due to her race, color, national origin, disability and requests for accommodations.

## FIRST CAUSE OF ACTION

### (TITLE VII AND AMERICANS WITH DISABILITIES ACT, as amended)

65. Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if thoroughly and fully set forth herein.

66. At all times relevant herein, Plaintiff was a person with a disability, and/or perceived as having a disability within the meaning of Title VII and the ADA, as amended. Plaintiff has a physical impairment, as set out above and herein which substantially limits one or more major life activities, including but not limited to the inability to drive at night, in the dark with poor vision and panic attacks that are brought on while being in dark places.

67. Defendants and specifically, its agents David Whitlock, Holly Smith, Kim Gordon and Bruce Dann, were aware of Plaintiff's disability at all times relevant to this Complaint.

68. At all times relevant hereunder, to the extent that Plaintiff had a disability within the meaning of Title VII and the ADA, Defendants had notice of the disability.

69. At all times relevant hereunder, Plaintiff was a qualified person with a disability, within the meaning of Title VII and the ADA.

14

70.     At all times relevant hereunder, Plaintiff could perform the essential functions of her position, with or without reasonable accommodations.

71.     At all relevant times hereunder, Plaintiff was performing the duties of her position satisfactorily.

72.     Employer-Defendants had a duty to investigate and provide reasonable accommodations for Plaintiff in that such accommodations did not invoke undue hardship on Defendants for the reasons mentioned hereinabove.

73.     To the extent that, at any time Plaintiff required an accommodation to perform an essential function of her position, reasonable and effective accommodation(s) were available.

74.     During all relevant times herein, there were reasonable accommodations that Defendants could have made without causing any undue hardship.

75.     Defendants failed and refused to engage with Plaintiff in the interactive process with respect to the necessity and nature of reasonable accommodations to assist Plaintiff in performing the essential function of her position.

76.     Defendants' actions, as alleged herein, violated Plaintiff's rights under Title VII and the ADA to be free from discrimination because of her disability and to not be retaliated against for pursuing such rights.

77.     During his employment, Plaintiff made repeated requests for a reasonable accommodation for her disability including, but not limited to, a modified schedule, and scheduling her driving times to allow sufficient time to properly perform her duties during daylight.

15

78.     Defendants' actions, as alleged herein, were intentional and committed with malice and reckless indifference to Plaintiff's state and federally protected rights by refusing to accommodate the disability and terminating her.

79.     At all times relevant herein, Plaintiff was a member of a protected class.

80.     When Plaintiff reported unfair and discriminatory treatment to Defendants' agents Bruce Dann, Kim Gordon, Candy Apple and Vickie Crabtree, thus engaging in protected activity, no corrective action was taken, but rather unjustifiable disciplinary action was taken against Plaintiff, and thus Defendants' discriminatory conduct has caused and continues to cause Plaintiff to suffer mental/emotional distress and inconvenience.

81.     The adverse employment actions suffered by Plaintiff culminated in her being terminated from employment.

82.     At the time of the adverse employment action, Plaintiff was performing at a satisfactory or above level, which met Defendants' legitimate job expectations.

83.     Defendants' unfair and unequal treatment of Plaintiff, directly or through its agents and at the recommendation of its agents, was willful, wanton, and was the direct and proximate cause of Plaintiff's injuries.

84.     Plaintiff has been injured as a direct and proximate result of Defendants' actions, as alleged herein, has suffered a loss of earnings and employment benefits, has been placed in great financial distress, and has been required to employ the services of an attorney to file her charge and bring this lawsuit. Plaintiff suffered greater physical damage as a result of Defendants' refusal to engage in the required interactive process and refusal to continue and consider reasonable accommodations for Plaintiff's disability. Plaintiff has also suffered occupational stress, emotional distress and physical anguish

16

from the loss of gainful employment. Plaintiff will continue to suffer additional damages in the future. Plaintiff is entitled to recover from Defendants her back pay, loss of wages, compensatory and punitive damages, in an amount to be proved at trial, but in excess of $10,000, together in interest thereon at the prevailing rate.

85. Plaintiff is entitled to recover from Defendants her reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 2000e-5(k) and 12117(a), and other applicable statutes, contingent upon Plaintiff securing counsel to represent her in this action.

## SECOND CAUSE OF ACTION
### (DISCRIMINATION AND RETALIATION IN VIOLATION OF NCPDPA)

86. Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if thoroughly and fully set forth herein.

87. This cause of action arises under North Carolina state law and is brought pursuant to the North Carolina Persons with Disabilities Protection Act, N.C. Gen. Stat. § 168A et seq.

88. Many of the definitions, purposes, protections, and requirements provided in the NCPDPA are very similar to those of the ADA, as detailed herein, and also apply to an employer with 15 or more employees.

89. Under the NCPDPA, a "person with a disability" includes those who "have a physical or mental impairment which substantially limits one or more major life activities, have a record of such an impairment, or are regarded as having such an impairment. A *qualified* person with a disability is one who can satisfactorily perform job duties with or without a reasonable accommodation.

90. As with the ADA, the definitions in the NCPDPA are construed broadly and liberally. Under the NCPDPA, "major life activities" include working.

91. Plaintiff was a qualified person with a disability under the NCPDPA as

17

alleged herein.

92. At a minimum, Defendants through its employees David Whitlock, Kim Gordon and Holly Smith, Managers were aware of Plaintiff's disability.

93. Discrimination against a qualified person with a disability under the NCPDPA includes the failure to reasonably accommodate a disabled employee's functional limitations where doing so would not impose an undue hardship on the operation of the employer's business.

94. Defendants are a national company which could have afforded, without undue hardship, reasonable accommodations to Plaintiff.

95. Plaintiff requested reasonable accommodations and work restrictions, or potential accommodations, and Defendants failed to provide the same to afford Plaintiff the opportunity to utilize previously afforded accommodations as required by the NCPDPA when she was terminated for exercising her rights.

96. Defendants discharged Plaintiff or otherwise discriminated against her in retaliation for Plaintiff requesting reasonable accommodations allowed under the NCPDPA, thereby violating N.C.G.S. § 168A-10.

### THIRD CAUSE OF ACTION
### (VIOLATION OF SECTION 504 OF THE REHABILITATION ACT AGAINST DEFENDANTS )

97. Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as thoroughly set forth fully herein.

98. Upon information and belief, Defendants receive federal financial assistance and are subject to Section 504 of the Rehabilitation Act of 1973, as amended.

99. Plaintiff is a qualified individual with a disability as defined in Section 504 of the Rehabilitation Act and is able to perform the essential functions of her job.

18

Plaintiff continued to be able to perform the essential functions of her job through her date of termination and could have continued to perform the essential functions of her job with a reasonable accommodation.

100.    Defendants engaged in discrimination and retaliatory practices in violation of Section 504 of the Rehabilitation Act and as a direct and proximate result of Defendants' violation of Section 504 of the Rehabilitation Act, Plaintiff has suffered a loss of earnings and employment benefits, has been placed in great financial distress, and Plaintiff will continue to suffer additional damages in the future.

## FOURTH CAUSE OF ACTION
### (RETALIATION)

101.    Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if thoroughly and fully set forth herein.

102.    During all relevant times, Plaintiff expressed her rights and Defendants were well aware that Plaintiff engaged in protected activity. From on or around May 2014, Plaintiff opposed Defendants' unlawful violation of her rights under the law, namely asserting her rights under Title VII, ADA and other statutes.

103.    As part of Plaintiff expressing her rights and engaging in protected activities, she expressed to Defendants her concerns, complained to management, and to Human Resources and did report to Human Resources during and subsequent to her employment termination and ultimately reported to the EEOC.

104.    Under all applicable statutes it is illegal to discriminate and retaliate and said statutes make it illegal to discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to file a claim or complaint with respect to her rights as enumerated therein.

19

105. Defendants' actions were in clear violation of Title VII, ADA, NCEEPA, NCPDPA and the N.C. State Constitution.

106. Plaintiff has been punished and terminated by Defendants in her employment as a result of Defendants' unlawful discrimination and retaliation in and related to employment against Plaintiff in violation of State and Federal Law, and Plaintiff has been substantially damaged by such discrimination and retaliation, and is entitled to recover both compensatory and punitive damages from Defendants on account of its willful and intentional discrimination and retaliation against Plaintiff.

107. Defendants retaliated against Plaintiff for Plaintiff's threatened and direct assertion of her rights on the bases as alleged herein and above and Defendants maliciously denied Plaintiff's need for accommodations, and in other cases interfered with her ability to utilize her accommodations, and set a course for her termination, depriving her of her compensation and ultimately her job.

108. Retaliation under the Title VII and the ADA occurs when an employer takes an adverse action against an employee because he or she engaged in a protected activity and there is a causal connection between the two.

109. A covered employee who alleges retaliation in violation of the ADA need not actually be a qualified individual with a disability.

110. A covered employee who alleges retaliation under the ADA also need not allege that she was treated differently because of disability.

111. A protected activity includes opposition to a practice believed to be unlawful discrimination. This includes an employee merely informing the employer his or her belief that it is engaging in prohibited discrimination or illegal behavior; filing an actual charge of discrimination is not required. Also included is requesting reasonable

20

accommodations permitted under the ADA, and Plaintiff meets these requirements.

112.    As alleged hereinabove, Plaintiff engaged in a protected activity by opposing discrimination when she communicated to Defendants that its actions were unfair and unlawful, and against her rights (as protected by the EEOC). Plaintiff had a reasonable and good faith belief that the opposed practice violated the anti-discrimination laws. Her manner of opposition was reasonable.

113.    Defendants and its agents were aware of Plaintiff's protected activity before taking the adverse action(s).

114.    There is a causal connection between Defendants' adverse action and Plaintiff's participation in a protected activity, which raises the inference of retaliation, in that Defendant's termination of Plaintiff on December 4, 2014 occurring shortly after Plaintiff's most recent protected activity between May 2014 and December 2014.

115.    Retaliation under Title VII, as amended, also occurs when an employer takes an adverse action against an employee because he or she engaged in a protected activity and there is a causal connection between the two.

116.    The primary, but not sole, adverse action in this case is Defendants' termination of Plaintiff on April 11, 2012. Plaintiff was also subjected to harassment, a hostile environment, and adverse treatment by Defeo and Hayes as compared to other employees outside the protected class.

117.    Plaintiff, a covered employee, is protected from retaliation by the employer for opposing *perceived* discrimination and which he or she has a reasonable and good faith belief that the opposed practice(s) are unlawful.

118.    Moreover, Plaintiff as a covered employee alleging retaliation under Title VII need not also allege that she was treated differently because of race, color, religion,

21

sex, or national origin.

119.    Plaintiff has suffered lost wages, lost benefits, and other economic losses as a proximate cause of the retaliatory action or discrimination taken against her by Defendants.

120.    As a direct and proximate result of Defendants' retaliation, as alleged herein, Plaintiff has been injured and is entitled to her back wages, reinstatement or front wages, compensatory and punitive damages and/or treble damages for its willful and reckless actions, attorneys' fees and costs, in an amount to be established at trial, but in excess of $10,000, together with interest thereon at the prevailing rate.

### FIFTH CAUSE OF ACTION
### (TITLE VII - NATIONAL ORIGIN AND ETHNICITY)

121.    Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if thoroughly and fully set forth herein.

122.    Plaintiff Wilson was the only dark-skinned African American female from England having an English accent and of Jamaican descent and was a member of a protected class.

123.    Even when the employer relies upon a racially-neutral selection criterion, an individual can establish a Title VII violation by showing that the criterion has a disparate impact on members of a particular racial group. Defendants' actions disparately impacted Plaintiff Wilson and a reasonable less discriminatory alternative existed.

124.    Plaintiff has suffered lost wages, lost benefits, and other economic losses as a proximate cause of the discrimination taken against her by Defendants.

125.    Plaintiff began to be treated very differently after Bruce Dann was hired. He would make comments to Plaintiff and ask her, "why do you have to talk like that?" In referring to her accent, these frequent comments were felt to be discriminatory and

inferred to be racial, meaning Bruce Dann needed Plaintiff to talk like a "regular black person." Upon information and belief, Plaintiff believed then and believes now that it bothered him to see a black-skinned person with an accent and simply could not reconcile this fact with his ethnic and racial biases and perceptions of Plaintiff Wilson. He began to isolate Plaintiff and prevented her from talking to others who had a lead role in the department when she needed to seek guidance support and information. Others were not prevented from doing so.

126. As a direct and proximate result of Defendants' discrimination on the basis of her ethnicity and national origin, as alleged herein, Plaintiff has been injured and is entitled to her back wages, reinstatement or front wages, compensatory and punitive damages and/or treble damages for its willful and reckless actions, attorneys' fees and costs, in an amount to be established at trial, but in excess of $10,000, together with interest thereon at the prevailing rate.

127. Defendants' actions, as alleged herein, violated Plaintiff's rights under Title VII and to be free from discrimination because of her ethnicity and national origin.

## SIXTH CAUSE OF ACTION
## (WRONGFUL DISCHARGE)[2]

128. Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if thoroughly and fully set forth herein.

129. Defendants discharged Plaintiff from her employment on December 4, 2014 for her purported refusal to adhere to the work schedule that contravened her previously allowed accommodations, disregard her medical condition and work until 6:00 p.m. daily.

---

[2] While this law is in influx at the moment, Plaintiff's incidents as alleged and undertaken against her by Defendants occurred prior to the changes in the NCEEPA, as modified by HB2.

23

130. Plaintiff further contends these actions were taken in the circumstances of her employment, and she was terminated in retaliation for reporting her concerns to David Whitlock, Kim Gordon, HR and refuting the instances referenced by Bruce Dann on her May 2014 performance review with the unsubstantiated, unjustifiable and forced scheduling issue, in retaliation for Plaintiff pursuing remedies as allowed by law. Thus, it was easier and less costly to terminate Plaintiff than to allow her to remain and exercise her rights, for which they were legally obligated to accommodate.

131. Defendants' conduct as alleged herein, constitutes wrongful discharge in bad faith and in contravention of express policy declarations contained in the North Carolina General Statutes and in the public policy of the State of North Carolina and the United States as prohibited by Coman v. Thomas Manufacturing Co. and Amos v. Oakdale Knitting Co.

132. That public policy is fundamental to the legal system and was violated, including but not limited to the public policy expressed in N.C. Gen. Stat. §§ 143-422.2,[3] the North Carolina State Constitution, Title VII, inclusive of the ADA.

133. North Courts recognize common law wrongful retaliatory discharge claims based on public policy as stated in the NCEEPA.[4]

134. Plaintiff alleges she was wrongfully discharged/terminated due to ethnicity/ national and on the basis of her disability and the opposition of such.

135. As set forth hereinabove, Plaintiff engaged in protected activity, Defendants took adverse actions and there exists a causal connection between the protected activity and the adverse actions.

---

[3] While this law is in influx at the moment, Plaintiff's incidents as alleged and undertaken against her by Defendants occurred prior to the changes in the NCEEPA, as modified by HB2.
[4] While this law is in influx at the moment, Plaintiff's incidents as alleged and undertaken against her by Defendants occurred prior to the changes in the NCEEPA, as modified by HB2.

24

136.     Plaintiff has been injured as a direct and proximate result of her wrongful discharge in violation of public policy, whereby since having last actively worked for Defendants in December 2014, Plaintiff has sought employment with a multitude of employers.  However, her search for obtaining regular, permanent and ongoing employment has proven to be unsuccessful and only recently became re-employed.

137.     By virtue of Defendants' violation of North Carolina public policy, Plaintiff is entitled to a judgment granting her the full range of remedies and to recover damages from Defendants in an amount to be proved at trial, but in excess of $10,000.

138.     The persons who participated in and condoned the wrongful acts alleged herein were officers, supervisors, managers and agents of Defendants or acting on behalf of Defendants, so that Defendants are directly and vicariously liable to Plaintiff for punitive damages pursuant to N.C. Gen. Stat. §1D-15.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)

139.     Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as thoroughly set forth fully herein.

140.     Defendants negligently engaged in the conduct complained of.

141.     It was reasonably foreseeable that such conduct would and could cause Plaintiff severe emotional distress.

142.     Defendants' conduct caused severe emotional distress whereby Plaintiff suffered headaches, extreme anxiety, inconvenience, financial hardship and unreasonably pressures resulting in depressive episodes by Plaintiff.

143.     As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff has been injured and is entitled to her back wages, reinstatement or front

25

wages, compensatory and punitive damages, attorneys' fees and costs, in an amount to be established at trial, but in excess of $10,000, together with interest thereon at the prevailing rate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a trial by jury of all issues so triable and respectfully prays for judgment and all other relief against the Defendants as follows:

1. Declare that the aforementioned practices and actions of Defendants as outlined in the above paragraphs, constitute unlawful employment practices in violation of the Americans with Disabilities Act and the Rehabilitation Act;

2. Award Plaintiff all lost wages, back pay, front pay in lieu of injunctive relief, lost job benefits and other economic losses, together with prejudgment interest, in excess of $10,00, with specific amounts to be determined at trial; and

3. Compensatory damages including job search expenses, medical expenses, and compensation for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation and loss of self-esteem caused by Defendants, in amounts to be determined at trial; and

4. Reasonable attorneys' fees, as applicable; and

5. Full costs of this action; and

6. Liquidated damages and/or treble damages; and

7. Punitive Damages as a result of Defendants engaging in intentional discrimination with malice or reckless indifference to Plaintiff's state and federally protected rights; and

8. Such other legal and equitable relief as the Court deems just and appropriate in order to make Plaintiff whole.

26

This the 27th day of May, 2016.

Loleitha (Tina) Wilson, *PRO SE*
4815 Shea Ct.
Monroe, NC 28110
P: (704) 488-3165

27

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
COUNTY OF MECKLENBURG      SUPERIOR COURT DIVISION
                                        16-CVS-_____

| | |
|---|---|
| LOLEITHA (TINA) WILSON | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| GUARDIAN PHARMACY OF | ) |
| PIEDMONT CAROLINAS, LLC D/B/A | ) |
| WINYAH PHARMACY; GUARDIAN | ) |
| PHARMACY, LLC. | ) |
| Defendant(s). | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 27, 2016, she filed the foregoing

Verified Complaint and Summons with the Clerk of Court and a copy was mailed via

First Class mail, Certified Return Receipt to the party addressed as shown below:

     Guardian Pharmacy of Piedmont Carolinas, LLC d/b/a
     Winyah Pharmacy, and Guardian Pharmacy, LLC
     c/o National Registered Agents, Inc.
     150 Fayetteville Street, Box 1011
     Raleigh, NC 27602

     *(Registered Agent for Defendants)*

This the 27th day of May 2016.

                     Loleitha (Tina) Wilson
                     *PRO SE*

28

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division
### Civil No. 3:16-cv-____

LOLEITHA (TINA)WILSON   )
          )
  Plaintiff,     )     **VERIFICATION**
          )
v.           )
          )
GUARDIAN PHARMACY   )
OF PIEDMONT CAROLINAS,  )
LLC D/B/A WINYAH    )
PHARMACY; GUARDIAN   )
PHARMACY, LLC     )
   Defendants.   )
          )

   I, Loleitha (Tina) Wilson, acknowledge and hereby attest that I have read

and hereby confirm the foregoing Complaint as true and correct to the best of my

knowledge and belief.

         _Loleitha Wilson_
         **Loleitha Wilson**


Sworn to and subscribed before me this 24th day of _May_
2016.

        _Jeffrey Strickland_
        **Notary Public**

My commission expires: 3-10-2018

[SEAL]

May 21, 2016

To whom it may concern:

I am writing to state that I have known Loleitha Wilson aka Tina Wilson since 2006. I began my employment with Winyah Pharmacy of the Piedmont in October 2009. I recommended her for the position at Winyah Pharmacy of the Piedmont. When I made the recommendation for hire to her then supervisor I did state the fact that Tina's work schedule would need to allow for her to drive into work and or leave work during daylight hours due to the fact that she has problems seeing at night and or in the early morning. The company interviewed and hired her for the position of Billing Specialist. During her employment, Tina did continue to work the schedule agreed upon and wound either drive in after daylight and or ride with family members or co-workers.

Thank you,

Mary L. Fountain

North Carolina
Cabarrus County
I, Saribet Gomez, a Notary Public for said County and State, do hereby certify that Mary L Fountain personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
Witness my hand and official seal, this the 21 day of May, 20 16.

(Official Seal)
Notary Public
My commission expires 06- 11, 20 19

SARIBET GOMEZ
My Commission Expires
NOTARY
PUBLIC
06-11-19
CABARRUS COUNTY, NC



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Loleltha Wilson<br>4815 Shea Ct.<br>Monroe, NC 28110 | From: | Charlotte District Office<br>129 W. Trade Street<br>Suite 400<br>Charlotte, NC 28202 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No |
|---|---|---|
| 430-2015-00562 | Rebecca A. Conway,<br>Investigator | (704) 954-6445 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Reuben Daniels, Jr.,
Director

2·29·16
*(Date Mailed)*

cc:
| Douglas M. Towns<br>SHERMAN & HOWARD<br>1555 Peachtree St., NE<br>Suite 850<br>Atlanta, GA 30309 | Bartina Edwards<br>THE LAW OFFICE OF BARTINA EDWARDS<br>10130 Mallard Creek Road<br>Suite 300<br>Charlotte, NC 28262 |
|---|---|